UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| B&S GLASS, INC., *et al.*,<br>          Plaintiffs,<br>v.<br>DEL METRO, *et al.*,<br>          Defendants. | Civil Action No. 20-2769 (CKK) |

**MEMORANDUM OPINION**
(July 30, 2021)

Plaintiffs B&S Glass, Inc., Luis Bottani, and Melissa Lopez bring this action against Defendants Del Metro, Inc. and Gary Dellovade, alleging that Defendants breached a construction contract, breached their implied duty of good faith and fair dealing, and violated the District of Columbia Wage Payment and Collection Law ("DCWPCL") by refusing to pay Plaintiffs for work they completed on a construction contract. *See* Am. Compl. ¶¶ 61–78, ECF No. 20. Plaintiffs further claim that Defendants' decision to terminate the contract was motivated by racial discrimination and that Defendants made defamatory statements. *Id.* ¶¶ 79–85, 89–92.

Pending before the Court is Defendants' [22] Motion for Partial Judgment on the Pleadings pursuant to Federal Rule of Civil Procedure 12(c), in which Defendants seek dismissal of Plaintiffs' claims for breach of the duty of good faith and fair dealing (Count III), defamation (Count IV), and racial discrimination (Count VI). Upon consideration of the pleadings,[1] the relevant legal authority, and the record as a whole, the Court shall **GRANT IN PART** and **DENY**

---

[1] The Court's consideration has focused on the following materials:
- Defendants' Motion for Partial Judgment on the Pleadings ("Defs.' Mot."), ECF No. 22;
- Plaintiffs' Response to Defendants' Motion for Partial Judgment on the Pleadings ("Pls.' Opp'n"), ECF No. 25;
- Defendants' Reply Brief in Support of Defendants' Motion for Partial Judgment on the Pleadings ("Defs.' Reply"), ECF No. 26; and
- Plaintiffs' Supplemental Memorandum of Law Opposing Defendants' Partial Rule 12(c) Motion ("Pls.' Suppl. Mem."), ECF No. 32.

1

**IN PART** in part Defendants' Motion.  The Court shall **GRANT** Defendants' motion as to Plaintiffs' claims for breach of good faith and fair dealing (Count III) and defamation (Count IV), concluding that both claims fail as a matter of law.  The Court shall, however, **DENY** Defendants' motion with respect to Plaintiffs' racial discrimination claim (Count VI), finding that disputes of material fact preclude the Court from entering judgment as a matter of law at this early juncture.

## I.  BACKGROUND

### A.  Factual Background

Plaintiffs in this matter are B&S Glass, Inc., a Virginia-based construction company; Luis Bottani, B&S Glass's owner; and Melissa Lopez, an employee of Defendant Del Metro.[2]  Am. Compl. ¶¶ 1–3.  Defendants are Del Metro, Inc. a Pennsylvania-based engineering company and its owner Gary Dellovade.  *Id.* ¶¶ 4–5.

On January 29, 2020, Defendants entered into a Master Subcontract Agreement (the "Agreement") with Plaintiffs to install "metal panel façade, flashings, sub girts, and insulation" for a total price of $289,000 on the Capital Vista Project (the "Project").  *Id.* ¶ 11; Am. Answer ¶ 11, ECF No. 21; Am. Answer Ex. A, Master Subcontract Agreement ("MSA"), ECF No. 21-1.  Plaintiffs claim that they performed their obligations under the Agreement until April 2020.  Am. Compl. ¶ 12.  Defendants respond that the work Plaintiffs completed during that time was "deficient and included poor quality control and multiple jobsite incidents."  Am. Answer ¶ 12.

Plaintiffs allege that in April 2020, Del Metro's project manager, Mr. Chad Ramsey, informed Plaintiffs that Del Metro would not make any further payments under the Agreement because B&S Glass's employees were not American citizens.  Am. Compl. ¶ 18.  Defendants contend that they "never conditioned payment for work completed based on the status of B&S

---

[2] Plaintiff Lopez alleges that Defendants failed to pay her wages in violation of the DCWPCL.  Defendants' Motion does not address Plaintiff Lopez's claim, and so the Court does not address it in this Memorandum Opinion.

Glass employees." Am. Answer ¶ 20. By this time, Del Metro had paid B&S Glass $161,522.36 of the $289,000 total contract price. Am. Compl. ¶ 16; Am. Answer ¶ 16; MSA Subcontract Agreement Rider, Ex. A ¶ 5.1. Plaintiffs claim that Defendants owe them $92,104.42—the value of the work they completed—out of the remaining contract balance ($127,347.44). Am. Compl. ¶¶ 17, 19. Defendants respond that the $161,522.36 paid to Plaintiffs was an overpayment relative to the work that Plaintiffs had actually completed on the Project. Am. Answer ¶ 16. Defendants dispute that they are obligated to make any further payments. Am. Answer ¶ 23.

In early April 2020, Plaintiff Bottani exchanged messages with Del Metro's project manager, Mr. Ramsey, about Del Metro's alleged unpaid balance to B&S Glass. Am. Compl. ¶¶ 23–24; Am. Answer ¶ 24. According to Plaintiffs, Plaintiff Bottani told Mr. Ramsey he needed the money to "pay the workers tomorrow" and that "the workers are very angry, and they are going to talk to the [general contractor] to claim the pay." Am. Compl. ¶¶ 26–27. Mr. Ramsey responded, "I send you a check today. Then I am done working with your company on the project. You [are] not 65% complete." *Id.* ¶ 28. Plaintiffs deny ever receiving a check. *Id.* ¶ 29. Defendants claim that they paid Plaintiffs $25,442.65 on April 6, 2020, and that the payment was part of the total $161,522.36 Defendants paid Plaintiffs. Am. Answer ¶¶ 28–29.

On April 8, 2020, Mr. Ramsey sent Plaintiff Bottani the following email:

> Please use this email as our formal termination of the contract for the capital vista project. This is due to a lack of production, poor quality control, and multiple jobsite incidents. Thursday 4-9-20 you are to remove your crews from the project effective immediately.

Am. Compl. ¶ 30; Am. Answer ¶ 30. Plaintiffs claim that this was the first notification they received regarding any production or quality control complaints. Am. Compl. ¶ 31. Defendants claim that they properly terminated the contract. Am. Answer ¶ 32.

3

On April 29, 2020, Defendant Dellovade (Del Metro's owner) sent Plaintiff Bottani a text message stating, "Luis, This is Gary Dellovade at Del Metro.  We will put you on another project ASAP but you must send in your certified payroll.  Will you do that?"  Am. Compl. ¶ 35; Am. Answer ¶ 35.  Plaintiffs allege that this was the first time they were asked to send "certified payroll" and that previously Plaintiff Bottani had sent payroll to Mr. Ramsey via email.  Am. Compl. ¶ 36.  Defendants deny these claims.  Am. Answer ¶ 36.  Plaintiff Bottani claims he replied to this text message: "If I have to do something that is missing, of course I will do it immediately."  Am. Compl. ¶ 41.

Plaintiffs contend that Plaintiff Bottani provided documents to Defendants showing he had paid his employees' wages.  Am. Compl. ¶ 47.  Plaintiffs also claim that Plaintiff Bottani told Mr. Ramsey, another Del Metro employee, and two employees of the Project's general contractor, Hamel Construction,[3] "I pay my guys every time Del Metro pays me."  *Id.*  The parties agree that Plaintiffs were instructed to submit "certified payroll" through LPC Tracker, a time tracking payroll software.  *Id.* ¶¶ 48–49; Am. Answer ¶¶ 48–49.  Plaintiff Bottani claims he experienced difficulties using the software because a Hamel Construction employee allegedly locked B&S Glass out of its LPC account, the software was in English while Plaintiff Bottani primarily communicates through Spanish, and the program required the entry of employees' U.S. passport numbers.  Am. Compl. ¶¶ 50–51.  Defendants deny for lack of information whether LPC Tracker was only available in English and if it required the entry of U.S. passport information.  Am. Answer ¶ 51.

Plaintiffs contend that from April through August 2020, Mr. Ramsey and/or Defendant Dellovade repeatedly told employees of B&S Glass and/or Del Metro that "Del Metro had already

---

[3] Neither Hamel Construction nor its employees are parties in this lawsuit.

4

paid all wages to Bottani, and that Bottani was not paying [his employees]" and that Plaintiff Bottani was "withholding payment of wages to his workers." Am. Compl. ¶ 53. Plaintiffs claim that these statements were "demonstrably false" and damaged Plaintiff Bottani's reputation. *Id.* ¶¶ 82–84. Defendants deny that these statements were made. Am. Answer ¶ 53.

According to Plaintiffs, on May 25, 2020, Mr. Ramsey participated in a conference call with representatives from Hamel Construction. Am. Compl. ¶ 42. It is unclear from the pleadings whether Plaintiff Bottani was present at this meeting. Plaintiffs allege that Mr. Ramsey said to the other participants, "Bottani is not going to get a dime, and Luis [Bottani] won['t] dare do anything because he is from south of the border" and that if "those Mexicans can't prove their citizenships, they won['t] get a dime!" *Id.* Plaintiffs further allege that Mr. Ramsey later stated, "We will simply take the Mexican's money." *Id.* ¶ 45. Plaintiff Bottani is a Hispanic man from Bolivia. *Id.* ¶ 10. Defendants deny these allegations. Am. Answer ¶¶ 42, 45.

### B. Procedural Background

Plaintiffs filed their original Complaint in the District of Columbia Superior Court on August 28, 2020. *See* Compl., ECF No. 1-1. Defendants were served with the Complaint on September 8, 2020. Notice of Removal ¶ 2, ECF No. 1. Defendants removed the case to this Court on September 29, 2020, based on the diversity of the parties under 28 U.S.C. § 1332. *Id.* ¶¶ 3, 5–9, ECF No. 1. After filing their Answer with Counterclaims on October 5, 2021, *see* Answer, ECF No. 6, Defendants moved for partial judgment on the pleadings with respect to certain claims contained in Plaintiffs' original Complaint. *See* Defs.' (First) Mot. for Partial J. on the Pleadings, ECF No. 15. Plaintiffs subsequently sought leave to amend their Complaint, to which Defendants consented. *See* Pls.' Resp., ECF No. 17; Defs.' Notice, ECF No. 19. The Court

5

granted Plaintiffs' request for leave to file an amended complaint and denied without prejudice Defendants' motion for judgment on the pleadings. *See* Minute Order (Jan. 28, 2021).

Plaintiffs' Amended Complaint includes six claims against Defendants: (1) failure to pay employees' wages in violation of the DCWPCL, (2) breach of contract, (3) breach of the duty of good faith and fair dealing, (4) defamation, (5) failure to make prompt payment to a subcontractor in violation of D.C. Code § 27–134, and (6) racial discrimination in violation of 42 U.S.C. § 1981. *See* Am. Compl. ¶¶ 61–92. Defendants have asserted three counterclaims: (1) breach of contract, (2) indemnification for payments made to employees of B&S Glass by Del Metro, and (3) indemnification for claims made by Plaintiffs for unpaid wages. *See* Defs.' Counterclaims ¶¶ 17–39, ECF No. 21.

Defendants again moved for partial judgment on the pleadings pursuant to Rule 12(c) with respect to three of the claims in Plaintiffs' Amended Complaint: breach of the duty of good faith and fair dealing (Count III), defamation (Count V), and race discrimination (Count VI). *See* Defs.' Mot. That motion is ripe for the Court's consideration.

## II.   LEGAL STANDARD

"After the pleadings are closed—but early enough not to delay trial—a party may move for judgment on the pleadings." Fed. R. Civ. P. 12(c). Rule 12(c) motions are frequently analyzed pursuant to the same framework as motions brought under Rule 12(b)(6), "testing the sufficiency of the statement of the claim for relief." *Murphy v. Dep't of Air Force*, 326 F.R.D. 47, 48 (D.D.C. 2018) (quotation marks omitted) (quoting 5B Charles Alan Wright & Arthur R. Miller, Federal Practice & Procedure § 1349 (3d ed. 2004)). Analyzing a motion under Rule 12(b)(6) requires the Court to accept the Complaint's allegations as true and the defendant to demonstrate that they are "unavailing nonetheless." *Id.* A motion brought pursuant to Rule 12(c), however, requires the

Court to render "a judgment on the merits . . . by looking at the substance of the pleadings and any judicially noted facts." *All. of Artists & Recording Cos., Inc. v. Gen. Motors Co.*, 162 F. Supp. 3d 8, 16 (D.D.C. 2016). A Rule 12(c) movant is entitled to judgment on the pleadings only if it "demonstrates that no material fact is in dispute and that it is entitled to judgment as a matter of law." *Jimenez v. McAleenan*, 395 F. Supp. 3d 22, 30 (D.D.C. 2019) (quoting *Schuler v. PricewaterhouseCoopers, LLP*, 514 F.3d 1365, 1370 (D.C. Cir. 2008)); *see also Lopez v. Nat'l Archives & Records Admin.*, 301 F. Supp. 3d 78, 84 (D.D.C. 2018). In other words, the moving party must "demonstrate that the law entitles him to win given the undisputed facts that have been alleged in both parties' pleadings." *Murphy*, 326 F.R.D. at 49. Accordingly, the Rule 12(c) burden is "substantial" and requires the movant to demonstrate "*both* that there is no material dispute of fact" and that "the law is such that the movant is entitled to judgment as a matter of law." *Id.* (citing *Tapp v. WMATA*, 306 F. Supp. 3d 383, 391–92 (D.D.C. 2016)).

### III.   DISCUSSION

#### A. Breach of the Duty of Good Faith and Fair Dealing (Count III)

Defendants first seek judgment on the pleadings with respect to Plaintiffs' claim for breach of the duty of good faith and fair dealing (Count III). *See* Defs.' Mot. at 7–9. Plaintiffs claim that Defendants breached a duty of good faith and fair dealing by: "(i) making it difficult to pay B&S Glass the monies and other costs due . . . , (ii) by not crediting all time sheets submitted to the Defendants; and (iii) by erroneously and falsely reporting to non-privileged third parties, that Plaintiffs were paid in full for all work performed." Am. Compl. ¶ 74.

The principal dispute between the parties is whether an implied duty of good faith and fair dealing arose from their contractual relationship—a question that hinges on whether District of Columbia or Virginia law applies, which in turn depends on whether the Agreement's choice-of-

law provision is enforceable. The Court concludes that pursuant to the parties' Agreement, Virginia law applies to Plaintiffs' claim for breach of the duty of good faith and fair dealing. Because Plaintiffs concede that this claim fails as a legal matter under Virginia law, the Court shall grant Defendants' Motion with respect to Count III and dismiss that claim.

The Agreement contains a choice-of-law provision, which provides:

> The Subcontract Documents, and any disputes arising under or related to the Subcontract Documents, Subcontractor's Work and/or the Project, shall be resolved in accordance with the laws of the Commonwealth of Virginia, exclusive of conflict of laws.

MSA ¶ 12.3. Plaintiffs argue that this choice-of-law clause does not apply because "the parties do not have a fully executed contract in this matter." Pls.' Opp'n at 4. It is undisputed that Plaintiffs *did* sign the written Agreement, but Defendants did not. Defendants do not claim that there was no contract. Plaintiffs fail to cite any authority supporting the proposition that one party's failure to sign a contract invalidates its choice-of-law clause—particularly where, as here, the party against whom the choice-of-law provision would be enforced (Plaintiffs) *did* sign the contract and where Plaintiffs' other claims rely on the existence of a valid contract. *See, e.g.*, Pls.' Suppl. Mem. at 6 ("In the present instance, B&S Glass had a contract with Del Metro[.]"). Notably, neither Virginia nor the District of Columbia requires a signature for the formation of a contract. *See S. Elec. Servs. v. Cornerstone Det. Prods.*, No. 7:10-CV-00076, 2010 U.S. Dist. LEXIS 54313, at *13-14 (W.D. Va. June 3, 2010) ("Under Virginia law, a written contract signed by only one party may be binding and enforceable even without the other party's signature, if the other party assented to the agreement."); *Sturdza v. U.A.E.*, 281 F.3d 1287, 1301 (D.C. Cir. 2002) ("[M]utual assent to a contract . . . is most clearly evidenced by the terms of a signed written agreement . . . [but] such a signed writing is not essential to the formation of a contract.") (quoting *Davis v. Winfield*, 664 A.2d 836, 837 (D.C. 1995)). Here, both parties manifested an intent to be bound by the terms of

the Agreement. The parties agree that Defendants paid B&S Glass approximately $161,523.36 for completed work from January to April 2020. Am. Compl. ¶ 16; Am. Answer ¶ 16; MSA ¶ 5.3. And Plaintiffs signed the document and contend that they completed work on the Project during that same time period. *See* MSA; Am. Compl. ¶ 12. Because the parties manifested their assent to the Agreement, Plaintiffs have failed to demonstrate that the choice-of-law provision is invalid.

Under District of Columbia law, courts enforce valid contractual choice-of-law clauses "as long as there is some reasonable relationship with the state specified." *Whiting v. AARP*, 637 F.3d 355, 361 (D.C. Cir. 2011) (quoting *Ekstrom v. Value Health, Inc.*, 68 F.3d 1391, 1394 (D.C. Cir. 1995); *Norris v. Norris*, 419 A.2d 982, 984 (D.C. 1980)); *see also Klaxon Co. v. Stentor Elec. Mfg. Co.*, 313 U.S. 487, 496 (1941) (holding that a federal court sitting in diversity applies the choice-of-law rules for the jurisdiction in which it sits). When one party to a contract is based in or has considerable operations in the state specified in a choice-of-law provision, then a "reasonable relationship" exists. *See Whiting*, 637 F.3d at 361 (applying District of Columbia law when defendant was a company based there); *Ekstrom*, 68 F.3d at 1394 (applying Connecticut law when defendant operated principally in the state); *Leitner-Wise v. Koniag, Inc.*, 798 F. App'x 672, 673 n.1 (D.C. Cir. 2020) (applying Virginia law to a contract dispute when a party to the agreement was incorporated in the state). B&S Glass is based in Virginia, which is the same state specified in the choice-of-law clause. Am. Compl. ¶ 2; Am. Answer ¶ 2; MSA ¶ 12.3. That is sufficient to establish a "reasonable relationship" with Virginia. *Whiting*, 637 F.3d at 361.

Plaintiffs, however, contend that the "Virginia choice of law provision does not apply because the District of Columbia has the greater interest in the matter." Pls.' Suppl. Mem. at 2.[4]

---

[4] After reviewing the parties' initial briefing, the Court concluded that Plaintiffs failed to address Defendants' arguments that the breach of the duty of good faith and fair dealing claims fails under Virginia law and failed to offer any argument addressing how application of District of Columbia law would warrant a different outcome. *See* Minute Order (July 6, 2021). Accordingly, the Court ordered Plaintiffs to submit a supplemental brief, addressing: (1) why

9

But most of the cases upon which Plaintiffs rely for this proposition do *not* involve contractual choice-of-law provisions. *See id.* at 2–4 (citing *Eli Lilly & Co. v. Home Ins. Co.*, 764 F.2d 876 (D.C. Cir. 1985); *Parnigoni v. St. Columba's Nursery Sch.*, 681 F. Supp. 2d 1 (D.D.C. 2010); *Allstate Ins. Co. v. Hague*, 449 U.S. 302 (1981)). And in the only case cited by Plaintiffs in which a contractual choice-of-law clause *was* at issue, the court enforced that provision even when a different jurisdiction had stronger ties to the matter. *See Armstrong v. Accrediting Council for Continuing Educ. & Training, Inc.*, 980 F. Supp. 53, 58–59 (D.D.C. 1997), *aff'd*, 168 F.3d 1362 (D.C. Cir. 1999). The court in *Armstrong* explained that in the *absence* of a contractual choice-of-law clause, it would apply the "substantial interest" analysis, *id.* at 58—which is what Plaintiffs propose here, Pls.' Suppl. Mem. at 2–5. But the court also noted that "District of Columbia choice of law doctrine recognizes the ability of parties to select the operative law they wish to govern a transaction as part of their freedom of contract," and enforced the choice-of-law provision. *Armstrong*, 980 F. Supp. at 58–59. Because the parties agreed that Virginia law would apply to claims "arising under" or "related" to B&S Glass's work on the Project, *see* MSA ¶ 12.3, the Court shall enforce that provision and apply Virginia law to Plaintiffs' claim for the breach of the duty of good faith and fair dealing.

Defendants argue that Plaintiffs' claim for breach of the duty of good faith and fair dealing fails as a legal matter under Virginia law, which does not "recognize an implied duty [of good faith and fair dealing] with respect to activity governed by express contractual terms." Defs.' Mot. at 7 (citing *Ward's Equip. v. New Holland N. Am.,* 493 S.E.2d 516, 520 (Va. 1997) (additional citation omitted)). Plaintiffs concede that this claim fails under Virginia law. Pls.' Suppl. Mem. at 5 ("If

---

Virginia law does not apply to this claim in light of Plaintiffs' execution of the contract containing the choice of law provision; (2) assuming Virginia law does apply, why their breach of the duty of good faith and fair dealing claim does not fail as a matter of law; and (3) assuming District of Columbia law does apply, why their breach of the duty of good faith and fair dealing claim does not fail as a matter of law. *Id.*


this Court concludes that Virginia law applies, then Plaintiffs['] Count III fails; since Virginia contains no provision for the breach of the duty of good faith and fair dealing."). Because the Court agrees with Defendants that Virginia law applies to this claim and Plaintiffs concede that they cannot maintain this claim under Virginia law, the Court shall dismiss Count III.

### B. Defamation (Count IV)

Defendants next argue that Plaintiffs' defamation claim fails as a matter of law. Plaintiffs' claim for defamation relies on the statements purportedly made by Defendant Dellovade or Mr. Ramsey, including that "Del Metro had already paid all wages to Bottani, and that Bottani was not paying them" and that Plaintiff Bottani was "withholding payment of wages to his workers." Am. Compl. ¶ 53. Plaintiffs claim that these statements harmed their reputation. *Id.* ¶¶ 82–84. Viewing these facts most favorably to Plaintiffs, the Court concludes that these statements are not defamatory as a matter of law and that Defendants are entitled to judgment on the pleadings with respect to Count IV.

A plaintiff claiming defamation must show: "(1) the defendant made a false and defamatory statement concerning the plaintiff; (2) the defendant published the statement without privilege to a third party; (3) the defendant's fault in publishing the statement amounted to at least negligence; and (4) either the statement was actionable as a matter of law irrespective of special harm, or its publication caused the plaintiff special harm." *Hourani v. Mirtchev*, 796 F.3d 1, 16 (D.C. Cir. 2015) (quoting *Oparaugo v. Watts*, 884 A.2d 63, 76 (D.C. 2005)). Defendants contend that Plaintiffs' defamation claim does not meet the first three elements. Defs.' Mot. at 9–15.

Whether a statement is "reasonably capable of any defamatory meaning . . . is a question of law." *Luhn v. Scott*, 843 F. App'x 326, 327 (D.C. Cir. 2021) (quoting *Smith v. Clinton*, 886 F.3d 122, 128 (D.C. Cir. 2018); *see also Weyrich v. New Republic, Inc.*, 235 F.3d 617, 627 (D.C.

Cir. 2001)). "A statement is defamatory if it tends to injure plaintiff in his trade, profession or community standing, or lower him in the estimation of the community." *Smith*, 886 F.3d at 128 (quoting *Weyrich*, 235 F.3d at 627). Additionally, the statement "must be more than unpleasant or offensive; the language must make the plaintiff appear odious, infamous, or ridiculous." *Id.* Defamation claims may be based on direct or implied statements, but when "entertaining claims of defamation by implication, courts must be vigilant not to allow an implied defamatory meaning to be manufactured from words not reasonably capable of sustaining such meaning." *Luhn*, 843 F. App'x at 328 (quoting *White v. Fraternal Order of Police*, 909 F.2d 512, 519 (D.C. Cir. 1990)).

      Plaintiffs argue that the alleged statements by Defendant Dellovade or Mr. Ramsey were defamatory because they implied that Plaintiff Bottani is a "cheat, a financial scoundrel, or a deadbeat, all of which hurt [him] in his personal and business reputation." Pls.' Opp'n at 6. But Plaintiffs rely on cases in which the court *dismissed* defamation claims, concluding that the alleged statements were not defamatory as a matter of law. *Id.* (citing *Smith v. Clinton*, 253 F. Supp. 3d 222, 241–42 (D.D.C. 2017); *Clawson v. St. Louis Post-Dispatch, LLC*, 906 A.2d 308, 316–17 (D.C. 2006); *Libre By Nexus v. Buzzfeed, Inc.*, 311 F. Supp. 3d 149, 156–58 (D.D.C. 2018)).[5] For example, in *Smith*, the court reasoned that the statements at issue "could be understood as casting [plaintiffs] as liars," but that such "unpleasant portrayal does not amount to defamation per se" when "all [the defendant] did was deny that [they were] lying." *Smith*, 886 F.3d at 128–29. Here, Defendants rebutted suggestions that they had failed to pay Plaintiffs for completed work and countered by saying that Plaintiffs had failed to pay their employees. Am. Compl. ¶ 53. Just as

---

[5] The defamation claims in all three cases were dismissed in response to motions under Rule 12(b)(6), but the court in *Clawson* treated the motion to dismiss as a motion for summary judgement under Rule 56. *See Smith*, 253 F. Supp. 3d at 232; *Clawson*, 906 A.2d at 311; *Libre*, 311 F. Supp. 3d at 150.

12

similar blame-shifting accusations were not defamatory as a matter of law in *Smith*, they are not defamatory here. *See* 886 F.3d at 128–29.

The context of Defendants' alleged statements further illustrates that they were not defamatory as a matter of law. As Defendants point out, "'[c]ontext' is a critical legal concept for determining whether, as a matter of law, a statement is reasonably capable or susceptible of a defamatory meaning." *Klayman v. Segal*, 783 A.2d 607, 614 (D.C. 2001) (citations omitted). Here, the speaker was reiterating the terms of the Agreement when he allegedly said that the reason B&S Glass employees had not been paid was because Plaintiff Bottani had failed to pay them; the Agreement indicates that Plaintiffs were responsible for labor costs. *See* MSA ¶¶ 2.3, 5.3. Plaintiff Bottani may view the assertion that he was withholding wages from his employees as "unpleasant and offensive," but "such perceived unpleasantness and offensiveness are not sufficient to sustain an allegation that material is reasonably capable of defamatory meaning." *Klayman*, 783 A.2d at 618 (citing *Howard Univ. v. Best*, 484 A.2d 958, 989 (D.C. 1984)). Accordingly, Defendants' alleged statements were not defamatory as a matter of law, and the Court shall grant Defendants' motion for judgment on the pleadings as to Plaintiffs' defamation claim and dismiss that claim.[6]

## C. Discrimination Claim (Count VI)

Finally, Defendants seek dismissal of Plaintiffs' discrimination claim under 42 U.S.C § 1981. The Court concludes that disputes of material fact present in the pleadings preclude it from entering judgment at this stage. Accordingly, the Court shall deny Defendant's motion with respect to Plaintiffs' allegations of racial discrimination.

All persons have the same right "as is enjoyed by white citizens" "to make and enforce contracts," which broadly includes "the making, performance, modification, and termination of

---

[6] Because the Court concludes that the alleged statements are not defamatory as a matter of law, which is sufficient to dismiss the claim, it does not address the parties' arguments regarding the privilege of self-defense and negligence.

13

contracts, and the enjoyment of all benefits, privileges, terms, and conditions of the contractual relationship." § 1981 (a)–(b). This "prohibition against racial discrimination in the making and enforcement of contracts applies to all phases and incidents of the contractual relationship, including discriminatory contract terminations." *Rivers v. Roadway Express*, 511 U.S. 298, 302 (1994). "In pleading a claim under section 1981, the 'plaintiff[s]' initial burden is not onerous.'" *Xia v. Tillerson*, 865 F.3d 643, 659 (D.C. Cir. 2017) (quoting *Nanko Shipping, U.S.A. v. Alcoa, Inc.*, 850 F.3d 461, 467 (D.C. Cir. 2017)). To properly plead a Section 1981 claim, a plaintiff "must allege that (1) the plaintiff is a member of a racial minority; (2) the defendant intended to discriminate against the plaintiff on the basis of race; and (3) the discrimination concerned an activity enumerated in § 1981." *Mazloum v. Dist. of Columbia Metro. Police Dep't*, 522 F. Supp. 2d 24, 37 (D.D.C. 2007) (quotations omitted).

The parties' dispute involves two issues: (1) whether Plaintiffs allege that Defendants discriminated on the basis of race (which is actionable under § 1981) or nationality (which is not); and (2) whether the Complaint sufficiently alleges racial discrimination as a "but-for cause" of Defendants' termination of the contract. The Court addresses each issue in turn.

### 1. Discrimination Based on Race or Nationality

The parties first dispute whether Plaintiffs' discrimination claim is based on race or nationality. "[A] plaintiff cannot base proof of discrimination under § 1981 solely on the place or nation of his origin." *Kidane v. Nw. Airlines, Inc.*, 41 F. Supp. 2d 12, 17 (D.D.C. 1999). Section 1981 claims are available only to those "who are subjected to intentional discrimination solely because of their ancestry or ethnic characteristics." *Saint Francis Coll. v. Al-Khazraji*, 481 U.S. 604, 613 (1987).

Defendants have failed to demonstrate as a matter of law that the alleged comments were based on national origin, rather than race. Plaintiffs allege that Mr. Ramsey stated that Plaintiff Bottani is "Mexican" and "from south of the border" and referred to B&S Glass employees as "those Mexicans." Am. Compl. ¶¶ 42, 45. Defendants contend that Plaintiffs "conflate race with national origin," because, if true, the alleged statements only discriminate against Plaintiff Bottani on the basis of his nationality. Defs.' Mot. at 18. On their face, many of Mr. Ramsey's alleged statements about "Mexicans" appear to refer only to nationality. But Plaintiff Bottani is Bolivian, not Mexican; whether Mr. Ramsey discriminated against Plaintiff Bottani because of his Hispanic characteristics—apparently leading him to assume that Plaintiff Bottani was from Mexico—is a factual issue that cannot be resolved by the Court at this stage. Referring to someone as being from "south of the border" could reasonably connote certain ethnic characteristics other than their nationality. *See, e.g.*, *Adetoro v. King Abdullah Acad.*, No. 1:19-cv-01918, 2020 U.S. Dist. LEXIS 229285, at *10 (D.D.C. Dec. 4, 2020) (reasoning that the terms "'Arabic' and 'Middle Eastern' do suggest 'ancestry or ethnic characteristics, rather than just country of origin.'"). Plaintiffs' factual allegations state a plausible claim that the termination of the Agreement resulted from discrimination based on Plaintiff Bottani's "ancestry or ethnic characteristics" rather than "solely on the place or nation of his origin." *St. Francis College*, 481 U.S. at 613. Although Defendants deny these allegations, the Court cannot resolve this claim as a matter of law based on the present record.

    **2. But-For Causation**

Defendants also argue that Plaintiffs failed to plead sufficient factual allegations to demonstrate that racial discrimination was a "but-for cause" of Defendants' termination of the Agreement. Section 1981 prohibits only "purposeful discrimination." *Gen. Bldg. Contractors'*

*Ass'n, Inc. v. Pennsylvania*, 458 U.S. 375, 391 (1982).  Accordingly, "a plaintiff must initially plead and ultimately prove that, *but for race*, it would not have suffered the loss of a legally protected right." *Comcast Corp. v. Nat'l Ass'n of Afr. Am.-Owned Media*, 140 S. Ct. 1009, 1019 (2020) (emphasis added).

The parties' pleadings present a factual dispute as to whether discrimination was a "but-for cause" of Defendants' termination of the contract.  Plaintiffs claim that Mr. Ramsey stated that Del Metro would not make any further payments under the Agreement because B&S Glass's employees were not American citizens.  *See* Am. Compl. ¶ 18.  Plaintiffs also allege that Mr. Ramsey stated that Del Metro would not pay Plaintiffs because Plaintiff Bottani "is from south of the border," and that if "those Mexicans can't prove their citizenships, they won['t] get a dime!" *Id.* ¶ 42.  These comments conditioning payment to B&S Glass could convey discriminatory animus; Plaintiffs plausibly allege that the discrimination underlies Defendants' purported refusal to perform their contractual obligations.  *See id.* ¶ 43.  There is a genuine dispute over these facts, because Defendants deny that Mr. Ramsey made these statements or conditioned payment on citizenship status.  Am. Answer ¶¶ 18, 20, 42, 45.  Therefore, dismissal of Plaintiffs' discrimination claim would be inappropriate at this early stage of litigation.

Defendants also argue that discrimination cannot have been a "but-for cause" of the contract's termination because Plaintiffs plead multiple explanations for the cancellation.  *See* Defs.' Mot. at 16–18.  But Defendants' argument fails to acknowledge that "[o]ften, events have multiple but-for causes."  *Bostock v. Clayton Cty., Georgia*, 140 S. Ct. 1731, 1739 (2020).  Moreover, in the two cases cited by Defendants in support of this argument, the *plaintiffs* provided non-discriminatory reasons for the defendants' cancellation of a contract; here Plaintiffs pleaded that *Defendants* gave them multiple non-discriminatory explanations for the cancellation.  *See*

16

Defs.' Mot. at 17–18; (citing *Astre v. McQuaid*, 804 F. App'x 665, 667 (9th Cir. 2020); *Adetoro*, 2020 U.S. Dist. LEXIS 229285, at *11–13). Plaintiffs allege that Defendants gave "shifting and changing reason[s] not to pay the Plaintiffs," including the failure to provide certified payroll and "a lack of production, poor quality control, and multiple jobsite incidents." Am. Compl. ¶¶ 30, 35, 36. But Plaintiffs contend that Defendants' true "motivation to not pay the Plaintiffs is because of their race." *Id.* ¶ 43. Race is not barred from being a "but-for cause" of the contract's cancellation simply because Plaintiffs allege that Defendants provided them with illegitimate, pretextual explanations for the termination. Accordingly, the Court shall deny Defendants' Motion as to Plaintiffs' race discrimination claim (Count VI).

## IV.    CONCLUSION

For the foregoing reasons, the Court **GRANTS** Defendants' Motion for Partial Judgment on the Pleadings with respect to Count III (breach of the duty of good faith and fair dealing) and Count IV (defamation) of the Amended Complaint and shall **DISMISS** those claims. The Court, however, **DENIES** Defendants' Motion with respect to Count VI (racial discrimination). An appropriate Order accompanies this Memorandum Opinion.

Date: July 30, 2021

<div style="text-align:right">

/s/
COLLEEN KOLLAR-KOTELLY
United States District Judge

</div>